UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | |
| | ) | Case No. 1:24-cr-62 |
| v. | ) ) | Judge Atchley |
| | ) ) | Magistrate Judge Dumitru |
| JERMICHAEL TILLERY | ) ) | |

## ORDER APPROVING AND ADOPTING REPORT AND RECOMMENDATION

On October 14, 2025, United States Magistrate Judge Michael J. Dumitru issued a Report and Recommendation ("R&R") [Doc. 56] recommending that Defendant Jermichael Tillery's First Motion to Suppress Traffic Stop, Subsequent Search, and Oral Statements [Doc. 32] be denied. Defendant requested additional time to file objections to the R&R [Doc. 57], and this Court granted that request, [Doc. 58]. Defendant, through counsel, filed objections to the R&R on November 19, 2025. [Doc. 61].

For the reasons explained below, Defendant's objections to the R&R are **OVERRULED**. Further, the R&R [Doc. 56] is **APPROVED** and **ADOPTED** as the opinion of the Court.

**I.     STANDARD**

This Court is required to perform *de novo* review of any objections to an R&R. 28 U.S.C. § 636(b); *United States v. Quinney*, 238 F. App'x 150, 152 (6th Cir. 2007) ("It is well-settled that upon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress."). The Court can accept, modify, or reject the findings or recommendations – in whole or in part. *Logan v. City of Chattanooga, Tenn.*, 2019 WL 4888890, at *1 (E.D. Tenn. Oct. 3, 2019).

1

II. **Defendant's Objections to R&R**

The Court identifies two distinct objections to the R&R in Defendant Jermichael Tillery's Objections to the Magistrate's Report and Recommendation. [Doc. 61]. First, Defendant objects to the Magistrate Judge's finding that Defendant was not "in custody" for the purposes of *Miranda* when he entered the front seat of Trooper Jackson's vehicle. [*Id.* at 2–5]. Second, Defendant objects to the Magistrate Judge's finding that, even assuming a *Miranda* violation occurred, suppression of the physical evidence is unwarranted because Defendant's statement to Trooper Jackson was voluntary. [*Id.* at 5–6]. Each of Defendant's objections are addressed individually below.

Importantly, Defendant does not object to the Magistrate Judge's proposed findings of fact, only to the implications that arise from them. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) ("The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." (internal citations omitted)). Since there are no particularized objections to the facts for the Court to review, this Court adopts and incorporates the proposed findings of fact contained in the R&R.[1]

A. **First Objection: "In Custody" for the Purposes of *Miranda***

Defendant's first objection is to the Magistrate Judge's finding that Defendant was not "in custody" for the purposes of *Miranda* when he entered Trooper Jackson's vehicle. [Doc. 61 at 2–5]. Defendant argues that Trooper Jackson's questioning of Defendant in the front seat of his patrol vehicle constituted a custodial interrogation. [*Id.* at 5]. Specifically, Defendant points to the location of the questioning, his inability to leave, and the fact that he was never told he did not have to answer Trooper Jackson's questions as evidence that his interaction with Trooper Jackson

---

[1] An in-depth discussion of the facts in this case can be found in the "Background" section of the R&R. [*See* Doc. 56 at 2–6].

2

Case 1:24-cr-00062-CEA-MJD    Document 62    Filed 12/01/25    Page 2 of 11    PageID #: 318

more closely resembled a coercive interrogation than a voluntary exchange. [*Id.*]. Based on the totality of the circumstances, the Court agrees with the Magistrate Judge's finding that Defendant was not in custody for purposes of *Miranda* when Trooper Jackson questioned him inside his patrol vehicle.

The Fifth Amendment of the United States Constitution provides: "No person . . . shall be compelled in any criminal case to be a witness against himself . . .". In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court specifically applied the Fifth Amendment privilege, holding that statements obtained in custodial interrogations by police may not be introduced unless the defendant was advised of his constitutional rights and subsequently waived them.

*Miranda* warnings are required only when the defendant is in custody or in the functional equivalent of custody. *Miranda*, 384 U.S. at 444. A defendant is "in custody" for the purposes of *Miranda* when there is a "significant deprivation of freedom." *Mason v. Mitchell*, 320 F. 3d 604, 632 (6th Cir. 2003). In determining whether a defendant is "in custody" for *Miranda* purposes, two discrete inquiries are essential to the determination: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). "The initial determination of whether a suspect is in custody, for purposes of *Miranda*, depends on the objective circumstances of the interrogation, not on the subjective views harbored by the interrogating officer. Stated differently, a policeman's unarticulated plan has no bearing upon whether a suspect is 'in custody,' so as to require *Miranda* warnings. Instead, the relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Caldwell v. Warren*, No. 2:10-cv-11930, 2011 U.S. Dist. LEXIS 10287, at *16–17 (E.D. Mich. Feb. 3, 2011) (internal citations omitted).

Not all restraints on freedom of movement amount to custody for *Miranda* purposes. As the Magistrate Judge points out, ordinary traffic stops, for example, do not constitute custodial interrogation even though the individual is not free to leave. *See Berkemer v. McCarty*, 468 U.S. 420, 437–39 (1984) ("Although an ordinary traffic stop curtails the 'freedom of action' of the detained motorist and imposes some pressures on the detainee to answer questions, such pressures do not sufficiently impair the detainee's exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights."). However, "if a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Id.* at 440.

As such, courts must examine the "objective circumstances of the interrogation to determine how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action." *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009) (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)) (internal quotation marks omitted). The Sixth Circuit has identified several factors courts should look to, including: "the location of the interview; the length and manner of questioning; whether the individual possessed unrestrained freedom of movement during the interview; and whether the individual was told she need not answer the questions." *Id.* (internal citation omitted).

In this instant case, the totality of the circumstances demonstrates that Defendant's encounter with Trooper Jackson did not involve the type of coercive pressures that would constitute a significant deprivation of freedom.

First, although Defendant was questioned in the front seat of Trooper Jackson's patrol vehicle, he entered the vehicle voluntarily, was never handcuffed or transported to an unfamiliar

4

location, and willingly engaged in a friendly conversation throughout the encounter. While being questioned in an officer's patrol vehicle can be intimidating, other factors may lead a court to conclude that the defendant was not "in custody" for the purposes of *Miranda*. *See United States v. Howard*, 815 F. App'x 69, 78–79 (6th Cir. 2009) (defendants in police car not "in custody" for *Miranda* purposes where, *inter alia*, they were not handcuffed or physically restrained); *United States v. Forbes*, No. 3:19-CR-151-TAV-DCP-10, 2021 U.S. Dist. LEXIS 111912, at *83 (E.D. Tenn. May 14, 2021) (holding the *Miranda* warnings were not required when the defendant voluntarily entered the patrol vehicle and willingly answered the officer's questions); *Harbert v. Howard*, No. 2:20-CV-13167, 2023 U.S. Dist. LEXIS 207598, at *25–26 (E.D. Mich. Nov. 20, 2023) (finding that the defendant was not "in custody" for *Miranda* purposes even though he was questioned in the back of a patrol vehicle because he agreed to enter the vehicle and speak with the detective).

Here, Trooper Jackson simply asked Defendant if he "would like to have a seat" in his patrol vehicle while he took his information, and Defendant accepted. [Doc. 56 at 3]. Instead of being escorted or instructed to enter the vehicle by Trooper Jackson, Defendant voluntarily "walked around the car to the passenger side and let himself in." [*Id.*]. After cordially discussing several other matters, including Defendant's motorcycle license, the cicada population in West and Middle Tennessee, and the tint laws in Tennessee and California, Trooper Jackson calmly asked Defendant, "Is there anything illegal in the car? Honesty goes a long way with me. I try to work with people as much as I can." [*Id.* at 4–5]. To which Defendant replied, "Ok, well I got three oxycodone pills." [*Id.*]. "'The place of the questioning in the present case is substantially less hostile or coercive than in other cases in which this court or the Supreme Court has held that a detainee was not entitled to a *Miranda* warning.'" *Forbes*, 2021 U.S. Dist. LEXIS 111912, at *83

5

(quoting *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003) (collecting cases in which individuals were questioned at police stations and found not to be in custody for purposes of *Miranda*)). The facts and circumstances present in this case do not demonstrate the type of coercive and intimidating environment courts usually deem sufficient to require *Miranda* warnings.

Defendant cites two cases in support of his claim that the location of the interview escalated into a custodial interrogation: *United States v. Hayes*, No. 3:19-CR-73-TAV-HBG, 2020 U.S. Dist. LEXIS 71818 (E.D. Tenn. Feb. 21, 2020); and *United States v. Brown*, No. 3:19-CR-191-TAV-HBG, 2021 U.S. Dist. LEXIS 250888 (E.D. Tenn. Dec. 22, 2021). However, as the Magistrate Judge points out, the facts in both cases are distinguishable from those here.

In *Hayes*, not only was the defendant ordered to get into the patrol vehicle, but the officer, when questing the defendant for the second time, "pressed him for answers to the point where [he] asked whether he had to answer." *Hayes*, 2020 U.S. Dist. LEXIS 71818, at *64. The Court also found that the stop itself was unreasonable in both duration and scope. *Id.* at *58–59. Because of the "unique circumstances" of the case, the court noted that the "interrogation grew increasingly intimidating as the questioning continued," which ultimately implicated *Miranda*. *Id.* at *64–65. Similarly, in *Brown*, the officer ordered the defendant to sit in his patrol car and even informed him that he could not leave the patrol car. *Brown*, 2021 U.S. Dist. LEXIS 250888, at *15.

Conversely, the facts in this case paint an entirely different picture when viewed altogether. Unlike the defendants in *Hayes* and *Brown*, Defendant here voluntarily entered Trooper Jackson's patrol vehicle after being politely asked if he wished to do so. There are no unique circumstances present that elevate the encounter between Defendant and Trooper Jackson into an intimidating interrogation. None of the factors that might otherwise heighten an encounter's coercive or intimidating nature—such as repeated or aggressive questioning, accusatory statements, an

unreasonable detention, or other unusual circumstances—are present here. Defendant identifies several factors that, when viewed in isolation, might suggest an intimidating environment; however, when considered alongside the voluntary nature of the encounter and Trooper Jackson's consistently claim demeanor, the totality of the circumstances reflects a consensual encounter and not the type of coercive setting that triggers *Miranda*'s protections.

Second, another factor that leads the Court to find that Defendant was not "in custody" for *Miranda* purposes is the length and manner of questioning. Trooper Jackson maintained a friendly, conversational tone throughout the entire encounter with Defendant.[2] Trooper Jackson never raised his voice, threatened Defendant, or suggested to Defendant that he had to speak to him. *See United States v. Luck*, 852 F.3d 615, 622 (6th Cir. 2017) (holding defendant was not "in custody" because, *inter alia*, "agents spoke to defendant in a calm, conversational manner, never becoming aggressive or brandishing their weapons"); *United States v. Maclin*, 393 F. Supp. 3d 701, 712 (N.D. Ohio Jun. 4, 2019) ("Agent Deterling spoke in a clear, calm manner. He did not speak in an accusatory or aggressive tone.").

Additionally, approximately 12 minutes elapsed between the time Trooper Jackson initiated the traffic stop and Defendant's admission. [Doc. 56 at 6]. And it is undisputed that the traffic stop here was reasonable in both duration and scope. [*Id.* at 14]. The length and nature of the stop in this case mirror the brief, routine traffic encounters that courts have consistently held do not trigger *Miranda* protections. See *United States v. Wright*, 220 F. App'x 417, 421 (6th Cir. 2007) (holding that fewer than 15 minutes of questioning while the defendant sat inside the police car did not render a traffic stop custodial); *United States v. Stone*, No. 21-CR-20080, 2021 U.S.

---

[2] Trooper Jackson first greeted Defendant in a "friendly tone" [Doc. 56 at 2–3]; the ensuring conversation in the patrol car was "cordial" [*Id.* at 4]; the two engaged in a casual discussion about cicadas in West and Middle Tennessee [*Id.*]; and at no point did Trooper Jackson force Defendant to engage in conversations with him.

7

Dist. LEXIS 177145, at *19 (E.D. Mich. Sept. 17, 2021) (finding that a routine traffic stop occurred when the defendant was only questioned for 10 minutes after the initial stop).

Defendant argues that because Trooper Jackson placed him in the patrol vehicle for the purpose of questioning him about potential illegal activity, this factor weighs in favor of finding that a custodial interrogation occurred. The Court finds this argument unpersuasive. An officer's underlying investigative purpose does not, by itself, make an encounter more or less coercive. As the Supreme Court has made clear, "[s]ave as they are communicated or otherwise manifested to the person being questioned, an officer's evolving but unarticulated suspicions do not affect the objective circumstances of an interrogation or interview, and thus cannot affect the *Miranda* custody inquiry." *Stansbury*, 511 U.S. at 324. Had Trooper Jackson affirmatively told Defendant that he suspected him of criminal wrongdoing, that might have heightened the coercive nature of the encounter. But absent such a communication, a reasonable person in Defendant's position would have no basis to believe he was in any greater trouble than that associated with the initial traffic stop. Moreover, officers routinely question individuals for the purpose of investigating possible criminal conduct. If the mere existence of that purpose triggered *Miranda*, officers would be required to administer warnings in virtually every interaction. *See United States v. Eaton*, 954 F. Supp. 2d 646, 650 (W.D. Mich. 2013) ("Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question.").

Under the totality of the circumstances, the Court finds that the questioning in this case was not intimidating or coercive. Although Defendant could not leave while he was questioned

8

Case 1:24-cr-00062-CEA-MJD    Document 62    Filed 12/01/25    Page 8 of 11    PageID #: 324

inside of a patrol vehicle, his detention was certainly not "of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983). Accordingly, Defendant's objection to the Magistrate Judge's finding that Defendant was not "in custody" for the purposes of *Miranda* is **OVERRULED**.

### B. Second Objection: Voluntariness of Defendant's Statements

Defendant's second objection is to the Magistrate Judge's finding that Defendant's statements were voluntary and not taken in violation of the Fifth and Fourteenth Amendments. [Doc. 61 at 5–6]. Defendant attempts to argue that Trooper Jackson's conduct somehow rose to the level sufficient to "overbear the defendant's will" in such a way that coerced the statement that drugs were present in the vehicle. *United States v. Ray*, 803 F.3d 244, 266 (6th Cir. 2015) (internal citation omitted). As such, Defendant contends that any physical evidence seized as a result of the coerced statement should be suppressed. [Doc. 61 at 6].

In analyzing whether a statement was voluntary or coerced, the Sixth Circuit has provided:

> "For a defendant's confession to be involuntary, and therefore obtained in violation of the Fifth Amendment, "coercive police activity" must have preceded the confession. . . . [The 6th Circuit Courts] have established three requirements for "finding that a confession was involuntary due to police coercion: (i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." Moreover, determining whether a defendant's statement to police was voluntary requires examining the totality of the circumstances.

*Ray*, 803 F.3d at 266 (quoting *United States v. Finch*, 998 F.2d 349, 356 (6th Cir. 1993)). Similar to how courts analyze a *Miranda* violation, courts are required to examine the totality of the circumstances when determining whether a statement was made involuntary in violation of the Fifth Amendment. *Finch*, 998 F.2d at 356. The government must prove the voluntariness of the defendant's statement by a preponderance of the evidence. *Ray*, 803 F.3d at 266–67 (internal citation omitted).

Here, the Court plainly finds that none of the three factors are present. Defendant was subjected to a routine, twelve-minute traffic stop during which Trooper Jackson remained consistently cordial and polite.[3] At no point was Defendant yelled at, threatened, physical abused, deprived of basic needs, subjected to psychological pressure, or exposed to any circumstance approaching the level of coercion. None of the traditional hallmarks of an involuntary statement are present. *See Lynumn v. Illinois*, 372 U.S. 528, 534 (1963) (confession was coerced when officers manipulated and encircled the defendant in her home); *United States v. Brown*, 557 F.2d 541, 551 (6th Cir. 1977) (confession obtained in the backseat of a patrol car was coerced because the defendant was emotionally distraught and had likely been beaten). Defendant argues that Trooper Jackson engaged in "subtle coercion in trying to encourage defendant to talk with him by advising him that things would go better for him if he cooperated." [Doc. 61 at 7]. The Court finds this argument wholly without merit, as officers tell suspects routinely that it may be in their best interest to cooperate. *See McCann v. Trombley*, No. 06-12693, 2009 U.S. Dist. LEXIS 37407, at *13–14 (E.D. Mich. May 4, 2009) ("And giving Petitioner the option of either telling the police what he knew about the robbery or having the police contact his mother and girlfriend for information about the robberies did not amount to coercive conduct. The police were free to discuss a reason why Petitioner should cooperate with them . . .."). Even if Trooper Jackson's conduct did rise to some form of psychological pressure, this factor would not make Defendant's statement involuntary in light of the totality of the circumstances.

After a careful review of the record in this case, the Court finds that Defendant's statements were not coerced in violation of the Fifth and Fourteenth Amendments. Defendant's objection to the finding that his statements were coerced are **OVERRULED**.

---

[3] The record in this case includes the bodycam footage capturing the entire exchange between Trooper Jackson and Defendant, admitted as Exhibit 2 at the evidentiary hearing conducted by the Magistrate Judge on September 18, 2025.

10

Case 1:24-cr-00062-CEA-MJD   Document 62   Filed 12/01/25   Page 10 of 11
PageID #: 326

## III. CONCLUSION

Thus, for all the reasons expressed above, Defendant Jermichael Tillery's objections to the R&R [Doc. 56] are **OVERRULED**. The R&R is **APPROVED** and **ADOPTED** as the opinion of the Court, and Defendant's First Motion to Suppress [Doc. 32] is **DENIED**.

**SO ORDERED**.

/s/ *Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**
